Good morning. This is a case that was decided based on adverse credibility finding by the judge. Now, the court has maintained in several cases that substantial evidence is the standard for reviewing credibility determinations. The immigration judge in this case specifically listed several reasons why she felt that the petitioner was not credible. The first thing the judge listed was the fact that the petitioner could not establish his origins. In other words, there was no passport in this case, and the only thing he presented as a form of identification was a driver's license. And the judge rejected that driver's license because the petitioner, amongst other things, did not know exactly how long the license was issued for. Therefore, she discounted it. There was talk about the fact that he had traveled through other countries with a false passport, but none of these things go to the heart of respondents' claim or identity. And incidentally, the driver's license submitted in this case was never sent for forensics. It was never investigated. The judge just discounted it. Another reason the judge gave for discounting or finding the petitioner in this case not credible was his description of the way he was mistreated by the police. The judge could not understand how the petitioner could claim that he was held from behind while laying on the floor and while he was being beaten. Now, the petitioner testified during his direct encross that his hands were stretched out above his head and somebody was holding them from behind him while someone else sat on his chest. Now, a simple demonstration would have showed the judge that the petitioner's level of education and perhaps his cultural way of speaking prompted him to describe being held from behind the way he did. And this also does not go to the heart of the claim. Nobody is disputing that he was mistreated and nobody is disputing that he was held by the police while he was being mistreated. It's just a question of his use of words that he was held from behind while laying flight on his back. MS. NELSON-FONTENOTE In your brief, you have a nicely organized list of the challenges to the credibility findings. MR. BOUTROUS Yes. MS. NELSON-FONTENOTE Were there any credibility findings or lack of credibility findings that you think were fairly credited to your client? MR. BOUTROUS I don't believe so. And the reason for this is very simple. This petitioner in this case has very limited education. The way he describes what happens to him is of basically a truck driver from India who lacks the sophistication to perhaps describe what has happened in his life as compared to, say, a law trained professional. There are several things that the judge listed and I can go through them one by one. One of them was the fact that the judge found issue with the number of times the petitioner transported political activists to rallies. And another one was what I consider to be speculation is how would the police know, for instance, that the petitioner was planning or the petitioner was going to transport political activists during an upcoming demonstration. And finally, the judge said that the petitioner's claim was not plausible because he was not a member of a political organization or party. Now, regarding the fact that the petitioner transported individuals to a rally, the number of times he did so is not at issue and should not have been used for credibility purposes. What is at issue is the fact that he was arrested while transporting political activists. That is the issue. And that makes it political because the passengers he was transporting were shouting pro-Khalistan slogans and waving pro-Khalistan banners. The police found this offensive, detained him for 17 days, and severely mistreated him. That was the issue in this case. The number of times he transported them makes no difference. The next issue as to whether or not or rather how would the police know he was planning to transport people on an upcoming demonstration. Well, this is an event that takes place every year. It's the Republic Day of India. It takes place on the 26th of January every year. The police know that these political activists do these demonstrations and even if they didn't know that, the petitioner is not obliged to speculate as to why the did. The petitioner testified that the police raided the homes of the people they had previously arrested and the people involved in demonstrations. And since he was arrested previously, they raided his home as well. Why the police did so, it's not the petitioner's place to speculate on that. The judge could speculate, but again, speculation and conjecture is not a proper basis for adverse credibility determination. The judges, this court has had so in numerous cases, more particularly in Shavi INS. And the judge's final determination that the petitioner's claim is not plausible simply because he was not a member of a political organization or party, again, is speculation. Because you don't have to be a member of a political organization to support a political cause or to transport individuals, for that matter, to a political rally. And the judge, by making these numerous speculations and conjectures regarding motives, in this case, of the police and of the petitioner, far stepped about and abused her discretion in finding this petitioner not credible. I mean, I will grant that the petitioner got confused several times during testimony, but that also arises from the way he was questioned during direct and cross-examination. And those confusions should have been resolved if the judge took the time to ask him those questions that would bring these answers to clarify whatever confusion existed. In some cases, the judge simply moved on and did not pursue a line of questioning just because the petitioner did not provide the type of answer she wanted. I take it your position is that the police imputed to Mr. Singh that he was involved in political activities and terrorism. Yes. Because of his religion and transporting these people with the signs of incarceration, could the police have legitimately arrested him because he was spiritually transporting terrorists who were shouting, kill the police? Well, I think extrinsic evidence will be needed for that conclusion to be made. For example, the police did not or the record does not contain any information whether or not the police found weapons on anyone so as to classify anyone as a terrorist. And the record does not contain any information as to whether or not the police actually filed charges, criminal charges, to prosecute the petitioner or anyone else arrested for violating any laws. Now, in the absence of a legitimate prosecutorial purpose, we have to presume that the motivation for the arrest and the mistreatment is strictly political, which in this case was the case. But isn't it possible that there was a different motivation? It may be possible, but the petitioner is not obliged to state categorically why the police did what they did, so long as part of the reason could be attributed to a protected ground under the law. So no finding was made by the NSA or the BIA that there was a legitimate motive. That's correct. So even if we agree with you on the credibility point, this would need to be remanded for an analysis under the remaining issues in the asylum claim, would it not? That is one possible way to dispose of this case, yes. Do you want to save your remaining time for rebuttal? Yes, thank you. Good morning. May it please the Court. Noroski Deschores for Respondent Gonzalez. We don't know who this guy is. Many aliens present themselves at our borders with false or no documents seeking refuge. But this alien went one step further. He presented two false documents, two questionable documents. He presented a birth certificate, which did not comply with the law. First of all, it was uncertified. And while counsel says it doesn't mention the birth certificate, but says none of the documents were authenticated, he didn't certify them. It's his burden to present. I mean, the regulations require certified documents. He did not present certified documents. There was he did not request that they be sent for forensics. He's seeking to shift the burden of proof to the immigration judge. And he may be talking about another case, because at no point was any excuse made that he's uneducated and didn't express himself. And he had an attorney. It was not the immigration judge's job to develop his claim. But the birth certificate he presented had what he claimed was his date of birth, 1974, in India. But it was produced for the hearing in 1998 according to a 1960 form. And it was uncertified. The form was changed in 1969. He had no explanation for why a form issued in 1998 for birth in 1974, which was five years after the law had changed, would be on a form that had been obsolete for 19 years before it was issued. It's surprising that he would present it. Yes, it is surprising, because he had no explanation. He didn't say it's true. The point is, this is what he is presenting to explain his identity, to establish his identity when nothing else has been found credible. And that is not credible evidence. He had an attorney. It was not certified. Did he testify that he was an Indian national? Yes. Does an alien have to corroborate his testimony? He doesn't. But if he's not credible and if he provides false or uncertified or unreliable documentation, yes, everything comes into question, because nothing he has said is credible. The driver's license, it was much more than counsel presents. The driver's license, and this is where we forget there was demeanor issues here, because it wasn't so much what happened to him when he was detained, it was his explanation. Again, he offers the excuse now for the first time at oral argument that maybe he didn't present and draw that testimony out of him. But it wasn't just on the detention. It was on everything. He presented a driver's license. Well, then it was a copy of a driver's license. And he said, well, I left my truck driver's license with some unnamed relatives. This is just my small driver's license. The driver's licenses are issued for 20 years, for 10 years, never more than 10 years. And then the immigration judge said, but this one's good for 20 years. Oh, and you just said it was 10 years. I never said that. Well, I think you did. Let's play back the tape. Well, I was wrong. He only says he's wrong when he's presented, he changes his testimony when he's presented with an inconsistency. He says you don't have to tell, you don't have to prove your age. Then he said you do have to prove your age. I had to be 16. I was 16 when I got the license. He was, if he was born in 1974, he was 19 when he got the license. I mean, nothing hung fire. Plus the fact it turned out it was a truck driver's license and not a small vehicle operator's license. Yes, he should know. If he is not found credible, he presents evidence to corroborate his identity when his identity is questioned. And that corroboration is itself so I agree with you that your statement of the law, and that is if there's a lack of credibility, you do need this corroborating evidence. Otherwise, it wouldn't be required. So leaving aside kind of where the credibility might shake out, I have some questions about the identity. And I just want to say something that disturbed me here, and maybe you can provide some explanation. On at least two occasions, the immigration judge is basically speculating as to why the evidence might not be credible. For example, in one point she says, well, in Mexico, notaries are formal and educated, and they would never have a typo in their notary stamp. Therefore, I in effect say the same thing in India. But we don't have any evidence. Well, we don't know in India. We don't know in rural India what happened. So that's one thing. And then another one, she says, well, the letter for the doctor comes from India, but he misspells knees, and he must speak English because he signs everything in English. Therefore, you know, why is there misspelling? And the thing that is a little troubling about that is kind of imposing a high-level American bureaucratic standard, which although even our own government employees don't always spell right, as you know, and not even judges always spell right. But why would those kind of discrepancies merit a discounting of the document? Well, it was, again, in the whole context where he's changing his testimony when faced with a prior inconsistency, and one of them being I transported people one or two times, I transported people 15 or 20 times. That makes a difference. Well, let's stick with these because I'm going to leave the credibility part aside because now if he doesn't have some credibility, he certainly has to produce some additional documents. Okay. Well, the notarized documents, that was not the strongest part of her disbelief. It was also two documents were issued, were notarized by the same person, but they were notarized in a different format by the same person, and they were not certified. The translation was not certified. But the point is it was the same notary, and I believe he was an attorney, who issued two completely, two documents which were completely, which were issued at the same time, but with different typos and different format. It made no sense. And again, this is not someone who's testifying credibly otherwise. This is someone who is coming from a region where, by the way, there is no more, you know, please keep in mind that the immigration judge also found that there was a possibility that he could relocate safely, that tensions in the Punjab and throughout India have died down, so there's also a finding of no well-founded fear even if he was persecuted on account of his political opinion or harmed on account of his political opinion, and even if that amounted to persecution. He has no well-founded fear, and he could relocate. Let me just stop there if I could. Even if we disagreed with you on credibility, so we credited his credibility, so to speak, what you're saying is that even if he had established what had happened, that he would fail on the second prong because of the ability to relocate. Absolutely. Absolutely. And there's no well-founded fear. But it really does ride on credibility, and this is a much stronger credibility case on the identity, again, because unlike, well, also you have to look at it in the bigger context that as the State Department reports that many Sikhs and non-Sikhs come to the United States to seek asylum pretending to be Sikhs who are harmed on account of, plus that arrest, he's driving a truck with 40 kids saying death to the pigs, the pigs come and they attack you. I mean, you remember the 70s. Forgive me. I mean, I've just shown my age. But the point is it doesn't compel credibility, it doesn't compel people to   find out the truth, it doesn't compel a finding of past persecution. It's one incident, things have changed. Why on earth would they be still looking for him in 2003? Was any evidence presented by the agency as to the motive of the police? No. Well, we don't know what happened. We're not even sure it did happen. The answer is you didn't? No. No evidence was presented. I'm sorry. I should have answered that. So the motive could have been, as you said, because he was a terrorist or conspired with terrorists? There was no evidence either way. It could be imputed motive. Imputing would be a stretch. They did let him go. Nothing happened to him after that. Of course, he claims that they go to his house and threaten him periodically, even though his parents tell him, you know, tell the police they've come to the United States. Nobody would believe that. I mean, why would they waste their time? The guy's gone. He transported some people. If this happened, he was punished in 1997. Why would they still be after him in 2003 and 2006? It doesn't have the ring of truth. And, again, this is different from most of the undocumented people we see seeking refuge. This is no corroboration, implausible, no he hasn't established that it's safe, whatever he experienced, even if credible, was on account of, and he hasn't established that there's nowhere in India where he could be safe, where his family continues to reside. Thank you. Thank you, Your Honors. Thank you, Your Honor. First of all, certification of records. This court has held in Cannes, the INS, that failure to obtain consular certification of foreign official records is not a basis to exclude corroborating evidence. The birth certificate that was presented in this case that was the source of such consternation to the judge was printed on the old birth certificate form that referred to the 1960 Act. And the big deal here was the fact that there was a 1969 Act that amended that, and why wasn't this birth certificate printed on the 1969 Act? Well, this petitioner is here in the United States, sends home to India for someone to obtain a birth certificate and send it to him. The birth certificate is printed by the officials who keep the official records for births and deaths in India. How is he in control of that? The fact that they chose to print it on an old form is up for speculation. Perhaps they ran out of the 1969 forms. These are issues that do not go to his identity. Nobody is disputing that. I mean, it's not a question of whether or not he's an Indian or not an Indian, but rather the birth certificate was printed on the wrong form. And that doesn't make any sense. Thank you. Thank both counsel for your arguments. The case of Singh v. Gonzalez is submitted.
judges: Alarcon, McKeown, Holland